IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JANICE R. CAUGHORN                                                    PLAINTIFF

        v.                         CIVIL NO. 2:16-cv-2024-PKH-MEF

CAROLYN COLVIN
Commissioner Social Security Administration                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Janice Caughorn, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423(d)(1)(A).   In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed for DIB on November 17, 2004, alleging an onset date of May 27, 2004, due to: migraines; recurrent pancreatitis; numbness and tingling in her hands and wrists; pain in her neck, hips, knees, and ankles; anxiety; depression; and, bipolar disorder. (Tr. 155, 662-665, 679)  An administrative hearing was held on February 21, 2007, following which the Administrative Law Judge ("ALJ") entered an unfavorable decision on August 14, 2007.  (Tr. 71)  On June 11, 2008, the Appeals Council ("AC") granted Plaintiff's request for review and remanded the case.  (Tr. 128)  A second hearing was held on April 23, 2009, followed by the entry of a second unfavorable decision on October 30, 2009.  (Tr. 86)  On April 7, 2011, the AC again remanded the case.  (Tr. 146)  A third administrative hearing was held on October 12, 2011,

following which the ALJ entered an unfavorable decision on October 17, 2011.  (Tr. 36, 655-718)

On December 19, 2012, the AC denied Plaintiff's request for review.  (Tr. 6)  Plaintiff then filed

an action for judicial review on February 19, 2013.  (Tr. 791)

 The parties consented to direct assignment to United States Magistrate Judge James R.

Marschewski, who entered his Memorandum Opinion and Judgment on February 20, 2014.  (Tr.

769-777)  Judge Marschewski remanded the case and ordered the ALJ to further develop the record

with regard to Plaintiff's limitations in the areas of:

> sitting, standing, and walking; handling, reaching, pushing/pulling, grasping;
> completing a normal workday or work week without interruptions from
> psychologically based or pain related symptoms; performing activities within a
> schedule; maintaining regular attendance; being punctual within customary
> tolerances; working in coordination with or proximity to others without being
> distracted by them; and, demonstrating reliability.

(Tr. 776)  Judge Marschewski also ordered the ALJ to consider evidence regarding Plaintiff's

access to indigent/low cost healthcare, and to compare Plaintiff's post-traumatic stress disorder

("PTSD") symptoms with listing 12.06.  (Tr. 776)

 An administrative hearing was held on August 25, 2015, at which Plaintiff appeared with

counsel and testified.  (Tr. 1314)  By written decision dated December 1, 2015, the ALJ found that

during the relevant time period Plaintiff had an impairment or combination of impairments that

were severe, namely pancreatitis, epigastritis, PTSD, bipolar disorder, and obesity.  (Tr. 724)  After

reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet

or equal the level of severity of any impairment listed in the Listing of Impairments found in

Appendix I, Subpart P, Regulation No. 4.  (Tr. 725)  The ALJ found Plaintiff retained the residual

functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to frequent
> reaching, handling, pushing, pulling, and grasping.  Work is limited to simple, routine, and
> repetitive tasks, involving only simple, work-related decisions, with few, if any, workplace

2

changes, and no more than occasional contact with co-workers, supervisors, and the general public.

(Tr. 726)  With the help of the vocational expert ("VE"), the ALJ determined that, during the relevant time period, Plaintiff would not be able to perform her past relevant work, but that there were other jobs that existed in significant numbers in the national economy Plaintiff would be able to perform, such as document preparation clerk, addressing clerk, and inspector/checker, printed circuit board checker.  (Tr. 734)

The ALJ's decision dated December 1, 2015, is the final decision of the Commissioner.  20 C.F.R. § 404.984.  Plaintiff filed this action on February 5, 2016.  (ECF No. 1)  Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation.  (ECF Nos. 11, 12)

## II. Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider the evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is

3

possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001; 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)(4). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

Plaintiff raises the following issues in this matter: (1) whether the ALJ erred in his RFC determination, and (2) whether the ALJ conducted a proper analysis at step five of the sequential evaluation process.

In order to qualify for DIB, a claimant must show that she became disabled during the period in which she met the DIB requirements. *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001). A claimant who becomes disabled after the expiration of her insured status is not

4

entitled to DIB.  *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998).  Here, the period of review is from May 27, 2004, the alleged onset date, through December 31, 2009, Plaintiff's last insured date**.**

### A. Credibility Analysis

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties, that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id*.  As the Eighth Circuit has observed, "[o]ur touchstone is that [the claimant's] credibility is primarily a matter for the ALJ to decide."  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain."  *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir.1995).  Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints."  *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994).  To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony."  *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223).  Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence.  *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)).  Further,

the ALJ may discount Plaintiff's allegations if there is evidence Plaintiff is a malingerer or was exaggerating symptoms for financial gain. *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). The ALJ's decision to discredit a claimant's testimony is entitled to deference where the ALJ provides a good reason for doing so, even if every factor is not discussed in depth. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). If "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir.1987)).

The ALJ made specific note of the opinions of Dr. Spray and Dr. Walz with regard to Plaintiff's credibility. The ALJ stated:

> There was also some question regarding the claimant's credibility during testing by Dr. Walz and Dr. Spray. Dr. Walz stated, "[h]er MMPI-2 was significantly elevated and probably invalid." She indicated that the claimant's scores were suggestive of "unusual or bizarre symptomatology," which was not noted during her examination. Dr. Spray reported that she "produced a grossly exaggerated [Minnesota Multiphasic Personality Inventory, Revised] ("MMPI-2") profile, and also did not give adequate effort on the Computerized Assessment of Response Bias ("CARB")." He stated that in spite of the CARB results, which suggested lack of effort on cognitive tasks, "she did not seem to have any significant cognitive impairment based on the mental status exam."

(Tr. 733). Referred by her attorney, Dr. Walz evaluated Plaintiff on February 12, 2007. (Tr. 387) Dr. Walz administered the Beck Depression Inventory, Beck Anxiety Inventory, and the MMPI-2, and she diagnosed Plaintiff as follows:

> Axis I:     Bipolar I Disorder, Most Recent Episode Depressed
>             Post Traumatic Stress Disorder, Chronic
>             Social Phobia
> Axis II:    Dyslexia by Report

(Tr. 391-392)  Dr. Walz opined Plaintiff "would certainly have difficulty functioning on the job in areas of communicating and getting along with others, being able to attend and to stay at work in spite of anxiety, and frustration tolerance," and "[h]er reported dyslexia would interfere with her ability to do detailed written work."  (Tr. 392)

Dr. Spray evaluated Plaintiff on November 13, 2008.  (Tr. 502)  Dr. Spray noted Plaintiff was not taking any medication and reported she felt medications did not relieve her symptoms. (Tr. 503)  Dr. Spray administered the CARB and the MMPI-2.  (Tr. 505)  He reported Plaintiff's effort on the CARB was poor and stated:

> While her performance was not clearly in the range of not attending to the task and completely shutting down, that is, random or near random responding, the effort was significantly below the effort expected by well motivated, normal controls, and persons with verified brain injury.  This performance is likely to be attained by individuals who are consciously or unconsciously exaggerating the extent or nature of clinical cognitive symptoms.  However, I did not find her to have significant impairment in cognitive ability on the mental status exam, so the CARB results suggest that she might be functioning at a slightly higher level than anticipated.

(Tr. 505)  With regard to Plaintiff's MMPI-2 results, Dr. Spray described them as "grossly exaggerated" and invalid.  (Tr. 505)  Dr. Spray opined, "[i]n spite of the CARB results . . . [Plaintiff] did not seem to have any significant cognitive impairment based on the mental status exam," and he diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Bipolar Disorder, NOS |
| | Post Traumatic Stress Disorder |
| Axis II: | No Diagnosis |
| Axis V: | 50-60 |

(Tr. 505-06)

The ALJ noted Plaintiff received no mental health treatment between the date of her previous denial in 2009 and her hearing in October 2011.  (Tr. 733)  Plaintiff previously indicated she was unable to afford further treatment, and this Court subsequently remanded this case for,

7

among other reasons, the ALJ to consider evidence Plaintiff may have been denied indigent or low cost physical and mental health treatment.  (Tr. 770-77)  Plaintiff testified on October 12, 2011, and the ALJ specifically considered in his opinion, that Plaintiff applied for indigent or low cost physical and mental health treatment but was dissatisfied with the waiting period to receive services and ceased further attempts to receive the care.  (Tr. 727, 733, 689-90)  On August 25, 2015, Plaintiff testified she had obtained insurance, "[s]ince the start of Obamacare."  (Tr. 1318)

The record contains conflicting statements made by Plaintiff to her healthcare providers and the Social Security Administration.  Dr. Powell's treatment notes for June 8, 2004, indicate Plaintiff stated her employment was terminated after she was shown a video by her employer allegedly accusing Plaintiff of workers' compensation fraud.  (Tr. 276-78)  On her Disability Report Form SSA-3368, Plaintiff stated her employment was terminated, "because they said I didn't have just cause to miss work even though I was under doctor's care."  (Tr. 188)  On February 12, 2007, Dr. Walz' noted, "[s]he said she was let go because, '[t]heir reason would be I wasn't a dependable work person because my pancreas caused me to miss frequently and I was making a ruckus about being assaulted and nothing was being done, so they wanted that to go away.'"  (Tr. 387)  In her testimony to the ALJ on October 12, 2011, Plaintiff stated her previous employer did not have a video of her.  (Tr. 711-13)

In another instance of inconsistent statements, Plaintiff reported to Dr. Brown on April 26, 2005, that she previously experimented with illicit drugs in the past; but, she reported to Dr. Spray on November 13, 2008, that she never used illicit drugs.  (Tr. 306, 503)  Plaintiff's inconsistent statements to her healthcare providers and the Social Security Administration are substantial evidence affecting Plaintiff's credibility.

The ALJ engaged in a proper credibility analysis. The ALJ's opinion specifically considered Plaintiff's daily activities (Tr. 725-33), the duration, frequency, and intensity of her pain (Tr.727-33), precipitation and aggravating factors (Tr. 727-33), the dosage, effectiveness, and side effects of her medication (Tr. 727, 729-32), and her function restrictions (Tr. 725-33). Although the opinion-writing technique employed by the ALJ may be questioned, the organization of the ALJ's opinion itself probably had no practical effect on the outcome of the case. Even though every factor is not discussed in depth specifically with regard to Plaintiff's credibility, the ALJ provided good reasons, supported by substantial evidence on the record as a whole, to partially discredit Plaintiff's testimony, and the ALJ's opinion is thereby entitled to deference. Accordingly, Plaintiff's argument on this point is without merit.

**B. RFC**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id.*; *see also Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control.); *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (To determine if a treating physician's opinion should control, "[t]he record must be evaluated as a whole" and the opinion must not be "inconsistent with the other substantial evidence."). "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

Dr. Brown, a state agency consultant, evaluated Plaintiff on April 26, 2005. Dr. Brown diagnosed Plaintiff as follows:

Axis I:        Major Depression, Recurrent, Moderate
               Post-Traumatic Stress Disorder, secondary to Sexual Abuse
Axis II:       No Diagnosis

(Tr. 307). Examination of the record reveals Dr. Brown's opinion was derived from his own observation and Plaintiff's subjective opinion. (Tr. 306-09) The ALJ determined Dr. Brown's opinion supported the determination Plaintiff could perform unskilled work, and he assigned it significant weight. (Tr. 729)

Plaintiff was examined by Dr. Walz on February 12, 2007. (Tr. 387-92) Dr. Walz' mental

RFC assessment identified many marked, severe, and extreme limitations in the areas of social relationships and occupational functioning. The ALJ gave Dr. Walz' mental RFC assessment some weight, but determined that the severity of limitations identified by Dr. Walz, specifically with regard to social relationships and occupational functioning, were not supported by other evidence on the record. (Tr. 730)

Dr. Spray, a state agency consultant, evaluated Plaintiff on November 12, 2008, and he provided a mental RFC assessment. (Tr. 502-12) Dr. Spray's mental RFC assessment identified only none, mild, or moderate limitation in all areas. (Tr. 510-11) The ALJ determined Dr. Spray's opinion supported the determination that Plaintiff could perform unskilled work and assigned it significant weight. (Tr. 731)

Dr. Smallwood, a non-examining physician, provided a mental RFC assessment and Psychiatric Review Technique ("PRT") report on May 10, 2005. (Tr. 318-29) Dr. Smallwood determined Plaintiff had marked limitation regarding her ability to understand, remember, and carry out detailed instructions and her ability to interact appropriately with the general public, but was otherwise not significantly limited. (Tr. 318-19) Dr. Smallwood further determined Plaintiff had a moderate degree of limitation in three of the functional areas, but indicated there was insufficient evidence to make a determination regarding episodes of decompensation. (Tr. 326)

A non-examining State agency physician provided a physical RFC assessment report on May 10, 2005. (Tr. 310-16) The physician limited Plaintiff as follows:

| | |
|---|---|
| Sitting: | About 6 hours in an 8-hour workday |
| Standing: | About 6 hours in an 8- hour workday |
| Walking: | About 6 hours in an 8-hour workday |
| Lifting: | Occasionally up to 20 pounds; frequently up to 10 pounds |
| Carrying: | Occasionally up to 20 pounds; frequently up to 10 pounds |

(Tr. 311) Moreover, the doctor determined Plaintiff had no push and/or pull limitations, postural

11

limitations, manipulative limitations, visual limitations, communicative limitations, or environmental limitations. (Tr. 311-14) With regard to the non-examining state agency consultants, the ALJ gave their opinions significant weight insofar as they demonstrated Plaintiff's mental impairments limited her to unskilled work, but determined "based on all the evidence of record including information received at the hearing level, [the ALJ] finds that the claimant was more limited physically through her date last insured than determined by the state agency consultants." (Tr. 733)

Dr. Furr evaluated Plaintiff on September 18, 2007 and conducted a physical RFC assessment. (Tr. 485-89) Dr. Furr limited Plaintiff as follows:

| | |
|---|---|
| Sitting: | 4-5 hours in an 8-hour workday |
| Standing: | 30 minutes in an 8-hour workday |
| Walking: | 30 minutes in an 8-hour workday |
| Lifting: | Occasionally up to 10 pounds |
| Carrying: | Occasionally up to 5 pounds |

(Tr. 485) Dr. Furr also determined Plaintiff was limited in the use of her right lower extremity, could occasionally push/pull and reach with her upper extremities, rarely grasp with the right hand and occasionally with the left, and occasionally engage in fingering/fine manipulation with either hand. (Tr. 486) Dr. Furr also assessed strict postural limitations and environmental restrictions. (Tr. 486-87) He opined, "[w]orking on a sustained basis would be out of the question," and "prognosis for significant improvement is very poor for the foreseeable future." (Tr. 489) The ALJ gave some weight to Dr. Furr's opinion but determined, "the severity of some of the limitations assessed are not supported by any of the other objective evidence of record or the claimant's own reported activities of daily living." (Tr. 731)

Dr. Westrbook, a state agency consultant, examined Plaintiff on December 3, 2008. (Tr. 491-501) In his Medical Source Statement, Dr. Westbrook determined Plaintiff had the following

limitations:

| | |
|---|---|
| Sitting: | 3 hours in an 8-hour workday |
| Standing: | 3 hours in an 8-hour workday |
| Walking: | 2 hours in an 8-hour workday |
| Lifting: | Occasionally up to 20 pounds |
| Carrying: | Occasionally up to 20 pounds |

(Tr. 496-97)  Dr. Westbrook also determined Plaintiff could frequently reach, handle, finger, feel, and push/pull with either hand and occasionally operate foot controls with either foot.  (Tr. 498) Dr. Westbrook further stated Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and could tolerate occasional exposure to all environmental hazards with the exception of never being exposed to unprotected heights.  (Tr. 499-500)  The ALJ gave some weight to Dr. Westbrook's opinion and specifically noted Plaintiff's one hundred percent (100%) grip strength, and contrasted Plaintiff's limitations in Dr. Westbrook's evaluation with Dr. Furr's evaluation. (Tr. 731-32)

The ALJ's RFC determination is supported by substantial evidence on the record as a whole.  The assessments by the physicians on the record vary greatly from one to the next. Moreover, Drs. Walz and Spray, both examining physicians, indicated some potential likelihood of exaggeration or other deception by Plaintiff during diagnostic testing which the ALJ took into consideration.  The ALJ properly weighed the evidence and assigned particular weight to each assessment, or parts of each assessment, to incorporate into his RFC determination.  The ALJ is responsible for resolving conflicts among medical opinions.  *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).  As stated previously, when the ALJ's opinion is supported by substantial evidence on the record, this Court will not substitute its own judgment in place of the ALJ's simply because it is possible to draw two reasonable yet inconsistent opinions.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

Plaintiff's activity level also undermines her assertion of total disability. Plaintiff admitted she: adequately took care of her personal needs (Tr. 195-97, 213, 215, 308, 390, 505); drove to the store (Tr. 195, 198-99, 215, 308, 389-90, 505, 670-72, 1327-28); drove her husband to doctors' appointments and physical therapy (Tr. 196, 505, 670-72); shopped when the store was not crowded (Tr. 215, 308, 391, 505, 671-72, 688, 1326-27); performed household chores (Tr. 214); cooked (Tr. 195, 197, 212-14, 308); handled her finances (Tr. 198, 214-15, 308, 390, 505-06); got along with her husband (Tr. 196, 213-15, 308, 389-90); and, interacted appropriately with her physical and mental health examiners. (Tr. 308, 391) Of course, there are cases in which a claimant's ability to engage in certain personal activities "does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (finding that "staying around the house" and "watching T.V." do not constitute substantial evidence that the claimant could work); *see also Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (a claimant's ability to engage in "personal activities such as cooking, cleaning, and hobbies" does not per se constitute substantial evidence that the claimant could work). That, however, is not the case here given both the extent of Plaintiff's daily activities and the independent medical evidence that she was not totally disabled as of December 31, 2009. *See, e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends").

Plaintiff argues, but not as an independent issue, that the ALJ improperly analyzed the medical evidence in light of his RFC determination instead of having determined the RFC based on analysis of the medical evidence.  (ECF No. 11, pgs. 15-17)  The ALJ stated in his opinion on more than one occasion he gave an opinion particular weight "in so far as it is consistent with the above [RFC]."  (TR. 730, 732)  It is well settled a claimant's RFC must be "based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Although the ALJ's choice of wording is unfortunate for the inferences raised, the ALJ's opinion writing style is harmless error in the present case.  In his opinion, the ALJ fully considered all relevant evidence in the record, including medical records, observations of treating physicians and others, and Plaintiff's own descriptions of her limitations.  His decision compared and contrasted the evidence available, and he reached a conclusion supported by substantial evidence on the record as a whole.  It is the opinion of this Court that remanding this matter for further elaboration by the ALJ on this issue alone would not produce any different result.  We find the ALJ's RFC determination is supported by substantial evidence on the record as a whole.  Accordingly, Plaintiff's argument with regard to the ALJ's RFC determination is without merit.

### C. Step Five Analysis

Plaintiff contends the ALJ failed to conduct a proper analysis at step five of the sequential evaluation process.  "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)).  The ALJ's hypothetical question included all the limitations found to exist

by the ALJ and set forth in the ALJ's RFC determination.  *Id*.  Based on our previous conclusion, that the ALJ's RFC findings are supported by substantial evidence, we hold that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.  *Id.*, *see also Lacroix*, 465 F.3d at 889.

## IV. Conclusion

For the reasons and upon the authorities discussed above, the undersigned recommends affirming the ALJ's decision and dismissing Plaintiff's case with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of August, 2016

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE